**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Ch. 11 |
| | ) | |
| CLARUS THERAPEUTICS HOLDINGS, | ) | |
| Inc., et al., | ) | |
| | ) | Case No. 22-10845 (MFW) |
| Debtors. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| GAVIN/SOLMONESE LLC, in its | ) | Adv. No. 24-50125 (MFW) |
| Capacity as Plan Administrator | ) | |
| under the Creditor Trust | ) | |
| Agreement, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BLUE WATER SPONSOR, LLC, Y. | ) | |
| JOSEPH HERNANDEZ, KIMBERLY | ) | |
| MURPHY, JAMES SAPIRSTEIN, | ) | |
| MICHAEL LERNER, YVONNE | ) | |
| MCBURNEY, and ELLENOFF | ) | |
| GROSSMAN & SCHOLE, LLP | ) | |
| | ) | Re: Adv. D.I. 53, 63, 64, |
| | ) | 70, 87, 88 |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION[1]**

Before the Court is the Motion of Ellenoff Grossman & Schole

LLP ("Ellenoff") to Dismiss Count Three of the First Amended

Complaint filed by Gavin/Solmonese LLC, in its capacity as Plan

Administrator under the Creditor Trust Agreement (the

---

[1] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Instead, the facts recited are those well-pled allegations in the Amended Complaint which must be accepted as true for the purposes of this Motion to Dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"Plaintiff").[2]  For the reasons stated below, the Court will deny
the Motion.

I.    <u>BACKGROUND</u>

On May 22, 2020, Blue Water Sponsor, LLC (the "Sponsor") and
Y. Joseph Hernandez ("Hernandez") formed Blue Water Acquisition
Corporation ("Blue Water") as a special purpose acquisition
company ("SPAC").[3]  Hernandez was the managing member of the
Sponsor and acted as the CEO of Blue Water.[4]  Kimberly Murphy,
James Sapirstein, Michael Lerner, and Yvonne McBurney served as
Blue Water's directors (the "Directors" and together with
Hernandez, the "Board").  Through an initial public offering
("IPO"), Blue Water raised $58 million and began a search for an
acquisition target.[5]

Blue Water ultimately identified Clarus Therapeutics, Inc.
("Clarus") as a likely candidate for acquisition[6] and on April
27, 2021, the parties entered into a business combination (the

---

[2]    Adv. D.I. 63.  References to the docket in the adversary
proceeding are to "Adv. D.I. #," while references to the docket
in the main bankruptcy case are to "D.I. #."

[3]    Adv. D.I. 53 ¶¶ 1, 4, 50, 67, 76, 82.

[4]    <u>Id.</u> ¶¶ 1, 9, 89.

[5]    <u>Id.</u> ¶ 6.

[6]    <u>Id.</u> ¶¶ 9-11.  At the time Clarus was a specialty
pharmaceutical company focused on androgen and metabolic
therapies.  D.I. 3 at 10.

"Merger") after which Blue Water changed its name to Clarus Therapeutics Holdings, Inc. ("Clarus Holdings").[7]  Ellenoff served as counsel to both Blue Water and the Sponsor throughout the process of raising funds, identifying an acquisition target, and completing the Merger.[8]

On September 5, 2022, Clarus Holdings and its subsidiary, Clarus (collectively the "Debtors") filed petitions under chapter 11 of the Bankruptcy Code.[9]  On February 9, 2023, the Court approved the Debtors' First Amended Combined Disclosure Statement and Plan of Liquidation under which the Plaintiff was appointed as the Plan Administrator.[10]

On September 3, 2024, the Plaintiff filed a complaint against, inter alia, the Sponsor, Hernandez, the Directors, and Ellenoff, which was amended on January 15, 2025 (the "Amended Complaint").[11]  The Amended Complaint asserts claims for breach of fiduciary duty against the Sponsor, Hernandez, and the Directors and asserts a claim against Ellenoff for aiding and abetting those breaches of fiduciary duty.[12]

---

[7]     Id. ¶¶ 1, 2, 3, 57.

[8]     Id. ¶¶ 17, 76-77.

[9]     Id. ¶ 23.

[10]    Id. ¶ 24.

[11]    Adv. D.I. 1, 53.

[12]    Adv. D.I. 53 ¶¶ 194-278.

On March 3, 2025, Ellenoff filed a Motion to Dismiss the Amended Complaint.[13]  On April 7, 2024, the Plaintiff filed its Brief in Opposition[14] and on March 16, 2025, Ellenoff filed its Reply Brief.[15]  The matter has been fully briefed and is ripe for decision.

## II.  JURISDICTION

The Bankruptcy Court has subject matter jurisdiction over all "proceedings arising under title 11 or arising in or related to a case under title 11."[16]  The Court finds that the claim against Ellenoff for aiding and abetting breaches of fiduciary duty is a non-core "related to" claim, as it arises under state law, not "in" or "under" the Bankruptcy Code.[17]

The Plaintiff consents to entry of a final order by the Court in connection with the adversary proceeding to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with

---

[13]    Adv. D.I. 63, 64.

[14]    Adv. D.I. 70.

[15]    Adv. D.I. 87.

[16]    28 U.S.C. §§ 157(a) &(b)(1), 1334(b).

[17]    28 U.S.C. § 157(b).  See, e.g., Official Comm. of Unsecured Creditors v. Yucaipa Am. All. Fund I, L.P. (In re Allied Sys. Holdings, Inc.), 524 B.R. 598, 606 (Bankr. D. Del. 2015) (holding that claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty are non-core, related to proceedings).

Article III of the United States Constitution.[18]  Although
Ellenoff does not consent to entry of a final order by the
Court,[19] it is not necessary for the Court to decide that issue
at this time.  Even if the Court does not have constitutional
authority to enter a final order, the Court does have authority
to enter orders on preliminary matters to the extent they do not
constitute a final adjudication.[20]  That includes the authority
of the Court to determine whether the Amended Complaint states a
plausible claim on which relief can be granted.[21]


III.  <u>STANDARD OF REVIEW</u>

Rule 12(b)(6) allows dismissal of an action if it "fail[s]

---

[18]    Adv. D.I. 53 ¶ 38.

[19]    Adv. D.I. 63.

[20]    <u>See</u> <u>O'Toole v. McTaggart (In re Trinsum Grp., Inc.)</u>, 467
B.R. 734, 738 (Bankr. S.D.N.Y. 2012) (holding that "both before
and after <u>Stern v. Marshall</u>, it is clear that the bankruptcy
court may handle all pretrial proceedings, including the entry of
an interlocutory order dismissing fewer than all of the claims in
an adversary complaint.") (citations omitted).  <u>See also</u> <u>Am.
Media Inc. v. Anderson Mgmt. Servs. (In re Anderson News, LLC)</u>,
Civ. No. 15-mc-199-LPS, 2015 WL 4966236, at *1-2 (D. Del. Aug.
19, 2015) (holding that bankruptcy court's authority to enter
final orders on non-core claims was not implicated where the
court entered an order denying summary judgment because that
order was not a final order (citing <u>Boyd v. King Par, LLC</u>, No.
1:11-CV-1106, 2011 WL 5509873, at *2 (W.D. Mich. Nov. 10, 2011)
("[E]ven if there is uncertainty regarding the bankruptcy court's
ability to enter a final judgment . . . , that does not deprive
the bankruptcy court of the power to entertain all pre-trial
proceedings, including summary judgment motions."))).

[21]    <u>See</u> <u>Trinsum Grp.</u>, 467 B.R. at 738.

to state a claim upon which relief can be granted."[22]  Under Rule 12(b)(6), a complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[23]

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face."[24]  Two working principles underlie this pleading standard:

> First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.  Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.[25]

Under this standard, a complaint must nudge claims "across the line from conceivable to plausible."[26]  The court must draw

---

[22]  Fed. R. Civ. P. 12(b)(6).  The applicable Federal Rules of Civil Procedure are incorporated into the Federal Rules of Bankruptcy Procedure.  See Fed. R. Bankr. P. 7012.  Therefore, citations herein are to the Federal Rules of Civil Procedure.

[23]  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[24]  Id. at 570.

[25]  Iqbal, 556 U.S. at 678 (internal citations omitted).

[26]  Twombly, 550 U.S. at 570.

all reasonable inferences in favor of the plaintiff,[27] and the movant "bears the burden to show that the plaintiff's claims are not plausible."[28]

In weighing a motion to dismiss, the Third Circuit instructs courts to follow a three-part analysis. "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"[29] Second, the court must separate the factual and legal elements of the claim, accepting all of the complaint's well-pled facts as true and disregarding any legal conclusions.[30] Third, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.[31] After conducting this analysis, the court may conclude that a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.[32]

---

[27] See, e.g., Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018).

[28] UMB Bank, N.A. v. Sun Cap. Partners V, LP (In re LSC Wind Down, LLC), 610 B.R. 779, 783 (Bankr. D. Del. 2020).

[29] Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675).

[30] Santiago, 629 F.3d at 130. See also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

[31] Santiago, 629 F.3d at 130.

[32] Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

IV.   DISCUSSION

The Amended Complaint alleges that the Sponsor was conflicted with respect to the Merger[33] and breached its fiduciary duties by, inter alia, controlling the Blue Water Board of Directors (the "Board"),[34] controlling the information provided to the Board (thus creating an information vacuum),[35] taking certain actions on behalf of Blue Water without Board approval,[36] and supporting the Merger even though it was not in the best interests of Blue Water[37] and was done without standard procedural safeguards.[38]  The Amended Complaint alleges that the Directors breached their fiduciary duties by approving the Merger even though it was not in Blue Water's best interests, because the Director Defendants had conflicts of interests resulting in them receiving a benefit from the Merger regardless of the lack of any benefit to Blue Water.[39]  With respect to Ellenoff, the Amended Complaint alleges that it aided and abetted the Sponsor's and the Directors' breach of their fiduciary duties in connection

---

[33]   Adv. D.I. 53 ¶¶ 5, 15, 52-53, 56, 59, 60-61, 62-65.

[34]   Id. ¶¶ 89, 90-93, 101.

[35]   Id. ¶¶ 138-85.

[36]   Id. ¶¶ 91-92.

[37]   Id. ¶¶ 88-93.

[38]   Id. ¶¶ 92, 128, 103-104, 105-107.

[39]   Id. ¶¶ 69-70, 72-74.

with the Merger.[40]

Ellenoff contends that the Amended Complaint should be dismissed as to it because (a) the Plaintiff lacks standing to assert the claims in the Amended Complaint, (b) the claims are barred by the doctrine of in pari delicto, (c) the Amended Complaint fails to allege sufficient facts to state a claim that there was a breach of fiduciary duty by any of the other Defendants, and (d) the Amended Complaint fails to allege sufficient facts to state a claim that Ellenoff aided and abetted any breach of fiduciary duty.

A.    Standing

Ellenoff argues preliminarily that the Plaintiff does not have standing to assert the causes of action contained in the Amended Complaint.  It contends that the claims at issue are properly characterized as direct shareholder claims rather than derivative claims held by Blue Water because the shareholders were the ones harmed (not Blue Water itself).[41]  Ellenoff

---

[40]    Id. ¶¶ 263-77, 284-94.  The Amended Complaint had also alleged that Maxim Group LLC had aided and abetted the Sponsor's and the Directors' breach of their fiduciary duties.  Id. ¶¶ 279-295.  That claim was settled in mediation, and the Plaintiff has filed a Notice of Voluntary Dismissal with prejudice of the Count against Maxim.  Adv. D.I. 109.

[41]    See Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1033-1039 (Del. 2004) (setting forth a two-part test for distinguishing direct from derivative claims: who suffered the harm and who will benefit from the recovery sought).  See also Brookfield Asset Mgmt., Inc. v. Rosson, 261 A.3d 1251, 1263 (Del. 2021).

asserts, for example, that the shareholders were the ones harmed by the allegedly misleading disclosures in the Proxy Statement because they relied on it in voting on the proposed Merger.[42] Ellenoff cites cases upholding the right of shareholders to bring similar direct claims resulting from a failed SPAC.[43]  Because these claims belong to the shareholders and not Blue Water, Ellenoff argues that the Count against it must be dismissed for lack of standing.

---

[42]    See, e.g., Adv. D.I. 53 ¶ 209(c) (alleging that "the material misrepresentations and omissions in the Proxy Statement . . . prevented the shareholder vote and redemption process from being an adequate check on the actions of a conflicted controlling shareholder and a conflicted board of directors."), ¶ 239 (alleging that "By providing inadequate disclosures about the Merger, the Defendants created an unfair process for shareholder approval of the Merger and redemptions."), ¶ 273 (alleging that "by being deprived of loyal directors who prioritize the company's interest over their own and who fairly and accurately disclose information material to matters for which a shareholder vote is held").

    See also Adv. D.I. 65 (Proxy Statement).  Ellenoff asserts that because the Amended Complaint extensively cites the Proxy Statement, the Court may consider it in determining the motion to dismiss.  Adv. D.I. 64 n. 1.  The Court agrees.  See, e.g., Schaper v. LENSAR, Inc., No. CV 23-292-JLH, 2024 WL 4817656, at *2 (D. Del. Nov. 18, 2024) (in considering a motion to dismiss securities lawsuit, court held that it could consider the proxy statement because it was relied on and integral to the complaint).

[43]    See e.g., Delman v. GigAcquisitions3, LLC, 288 A.3d 692, 709 (Del. Ch. 2023) (finding claims that alleged impairment of redemption rights were direct claims of the shareholders where the "harms are individually compensable"); In re MultiPlan Corp. S'holders Litig., 268 A.3d 784, 792 (Del. Ch. 2022) (finding that crux of allegations in shareholders' class action suit were that the directors' misrepresentations in the proxy statement impaired their redemption rights and therefore were direct claims that the shareholders had standing to bring).

The Plaintiff responds that it has standing to bring the claims asserted in the Amended Complaint.  It contends that at the motion to dismiss stage, the question of whether a suit is derivative or direct is one which must be determined from the face of the Amended Complaint,[44] which in this case explicitly pleads the existence of a claim for damages sustained by Blue Water itself.[45]  Specifically, the Plaintiff asserts that it has alleged that the corporation was injured by the alleged bad acts of the Defendants which resulted in Blue Water paying too much for Clarus.[46]  It argues that under Delaware case law it is clear that claims for overpayment and rescission are considered claims

---

[44]   See Potter v. Cozen & O'Connor, 46 F.4th 148, 155-57 (3d Cir. 2022) (concluding that a motion to dismiss for lack of standing is properly considered under Rule 12(b)(6)); In re SemCrude, L.P., 796 F.3d 310, 317 (3d Cir. 2015) ("[W]hether a suit is derivative or direct is drawn from the face of the complaint.").  See generally, Iqbal, 556 U.S. at 663-64 (under Rule 12(b)(6) the court must accept the well-pled facts alleged in the complaint as long as they are not mere recitals of the legal elements of a claim).

[45]   Adv. D.I. 53 ¶ 193 (alleging that ". . . these claims are brought on behalf of Blue Water for damages caused to the company by breaches of duties owed to the company and the aiding and abetting of such breaches.").

[46]   Id. ¶¶ 21 & 22 (alleging that "The Merger with Clarus was unfair in the price of the transaction as well. Contrary to the advocacy of Hernandez, with the substantial assistance of Maxim Group, Blue Water's investment of approximately $24 million in Clarus was completely unfair for Blue Water.  Clarus had never been profitable, had significant debt, and was on the brink of bankruptcy. . . .  Within a year of the closing of the Merger, Clarus had filed for bankruptcy and Blue Water's investment was completely lost.").  See also id. ¶¶ 215, 256, 276, 293.

belonging to the corporation.[47]   The Plaintiff asserts that even

the cases cited by Ellenoff confirm this principle.[48]

    The Court concludes that the Defendant's argument that the

Plaintiff lacks standing to bring the claims in the Amended

Complaint is not well-founded.   To determine whether a stated

claim is direct or derivative, Delaware courts[49] apply a two-part

---

[47]   See, e.g., El Paso Pipeline Grp., L.L.C. v. Brinckerhoff,
152 A.3d 1248, 1261 (Del. 2016) (corporate overpayment claims
cause harm to the corporation by wrongfully depleting the
corporate assets) (citations omitted); Lenois v. Lawal, No.
11963-VCMR, 2017 WL 5289611, at *20 (Del. Ch. Nov. 7, 2017)
(holding that the remedy of rescissory damages "seems quite
obviously to belong to the Company" because its purpose is to
compensate the company for the impracticality of rescinding the
unfair transaction).

[48]   See, e.g., Delman, 288 A.3d at 709 (explaining that with
overpayment claims "the corporation's funds have been wrongfully
depleted, which, though harming the corporation directly, harms
the stockholders only derivatively so far as their stock loses
value" but finding that the claims asserted in that case by the
shareholders were direct claims because they asserted that the
directors breached their fiduciary duty by withholding
information necessary to allow the shareholders to exercise their
redemption rights (quoting El Paso Pipeline, 152 A.3d at 1261));
Multiplan, 268 A.3d at 802 (noting that overpayment claims are
"normally viewed as 'exclusively derivative'" claims belonging to
the corporation but concluding that the claims at issue were
direct shareholder claims because they alleged that the Board
interfered with the shareholders' informed exercise of their
redemption rights and that the funds held by the corporation were
held in trust for the shareholders until they decided not to
exercise those rights).

[49]   Delaware law applies here because the claims for breach of
fiduciary duty are asserted against Blue Water, which is
incorporated in Delaware, and its fiduciaries and agents.   Off.
Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman
Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.), 405 B.R.
527, 539 (Bankr. D. Del. 2010) ("Under the internal affairs
doctrine, only one state has the authority to regulate a
corporation's internal affairs - matters peculiar to the

test: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"[50]

In this case, the Plaintiff has alleged that because of the breaches of fiduciary duty, Blue Water overpaid for the acquisition of Clarus.[51]  As a result of that overpayment, the Plaintiff seeks to recover, for the benefit of the estate, damages including rescissory damages.[52]  Accepting these allegations as true, which the Court must at this stage, the Court concludes that the Plaintiff has stated a claim for harm suffered by the corporation directly,[53] which under the terms of

---

relationships among or between the corporation and its current officers, directors, and shareholders.  The state given this authority, of course, is the state under which the corporation in question is chartered.") (internal citations omitted).

[50]   Tooley, 845 A.2d at 1033-1039 (Del. 2004) (both prongs of the test must be met to label the claims as shareholder claims). See also Brookfield Asset Mgmt., 261 A.3d at 1263.

[51]   Adv. D.I. 53 ¶¶ 21 & 22, 108-24, 179-91.

[52]   Id. ¶¶ 214-16, 256-57, 275-77, 292-94.

[53]   See, e.g., Lenois, 2017 WL 5289611, at *20 (holding that the remedy of rescissory damages "seems quite obviously to belong to the Company").  See also Delman, 288 A.3d at 709 (holding that overpayment in a merger harms the corporation directly but only harmed the stockholders "derivatively so far as their stock loses value."); El Paso Pipeline, 152 A.3d at 1261 (treating corporate overpayment claims as seeking recovery for harm done to the corporation); Multiplan, 268 A.3d at 802 ("Overpayment claims allege that corporate fiduciaries, in breaching their duties, caused an exchange of assets or equity at a loss to the corporation.  They are normally viewed as 'exclusively derivative

the confirmed Plan it has standing to bring.[54]  While in some

unique circumstances, courts have held that shareholders may have

direct claims for the same conduct that has been alleged in this

case (the failure to disclose to shareholders relevant facts of a

merger), the courts have held that such a direct claim does not

negate any claim of the corporation arising from the same actions

of the directors and officers and that the corporation's claim

may even trump the shareholders' claims.[55]

    B.    In Pari Delicto

    Ellenoff also argues that the claims against it are barred

by the doctrine of in pari delicto.  Ellenoff argues that under

that doctrine, a corporation is precluded from suing third

parties, including its professionals, for participating with the

---

under the Tooley analysis.'").

[54]    Adv. D.I. 53 ¶ 24; D.I. 320 ¶ 6.

[55]    See Brookfield Asset Mgmt., 261 A.3d at 1263 (holding that
the rule prohibiting a double recovery for the same injury
precludes shareholders from asserting direct claims for
impairment of their redemption rights where the corporation has a
claim for overpayment).  But see Multiplan, 268 A.3d at 805
(allowing the shareholders' claims to proceed "because the
potential harm in this case is distinct [from the harm to the
corporation] and the recovery would flow directly to the public
stockholders, [so] the plaintiffs would not recover twice for the
same injury if an overpayment claim was also pursued.  At bottom,
the plaintiffs are not suing because Churchill did not combine
with MultiPlan on more favorable terms.  They are suing because
the defendants, purportedly for self-serving purposes, induced
Class A stockholders to forgo the opportunity to convert their
Churchill shares into a guaranteed $10.04 per share in favor of
investing in Public MultiPlan.  That claim is direct.").

corporation in a fraud.[56]  Ellenoff contends that the doctrine
also applies to bar the assignee of a bankruptcy estate, such as
the Plaintiff, from asserting claims against a debtor's
professionals for participating in alleged misconduct with the
debtor's officers and directors.[57]

Ellenoff argues that the doctrine applies to bar this suit
by the Plaintiff, on behalf of Blue Water, because the allegedly
improper actions of Blue Water's directors and officers are
imputed to Blue Water.[58]  While acknowledging there is an

---

[56]   See In re Am. Int'l Group, Inc., Consol. Derivative Litig.,
976 A.2d 872, 882 (Del. Ch. 2009) ("[I]n pari delicto is a
general rule that courts 'will not extend aid to either of the
parties to a criminal act or listen to their complaints against
each other but will leave them where their own act has placed
them.'  The underlying idea is that there is no societal interest
in providing an accounting between wrongdoers.") (citations
omitted).

[57]   See Official Comm. of Unsecured Creditors v. R.F. Lafferty &
Co., Inc., 267 F.3d 340, 355 (3d Cir. 2001) (affirming dismissal
of claim brought by creditors committee against third parties
allegedly acting in concert with the debtor and its president and
sole shareholder because the wrongful acts of the president and
sole shareholder were imputed to the corporate debtor and the
committee); Terlecky v. Hurd (In re Dublin Sec., Inc.), 133 F.3d
377, 379-80 (6th Cir. 1997) (holding that the doctrine of in pari
delicto was properly applied to bar trustee's claims against
debtors' law firms because the actions of the debtors' principals
were instrumental in perpetrating the fraud and were attributable
to the debtors).

[58]   See. e.g., Stewart v. Wilmington Tr. SP Servs., Inc., 112
A.3d 271, 302-03 (Del. Ch. 2015) ("A basic tenet of corporate
law, derived from principles of agency law, is that the knowledge
and actions of the corporation's officers and directors, acting
within the scope of their authority, are imputed to the
corporation itself."), aff'd 126 A.3d 1115 (Del. 2015); Teachers'
Ret. Sys. of La. v. Aidinoff, 900 A.2d 654, 671 n.23 (Del. Ch.
2006) ("[I]t is the general rule that knowledge of an officer or

exception to the in pari delicto doctrine if the corporation's agents acted in their own interests and not the corporation's,[59] Ellenoff contends that the exception does not apply in this case because the underlying conduct actually benefitted Blue Water: in the absence of the Merger with Clarus, Blue Water would have had to dissolve.[60]

The Plaintiff responds that the doctrine of in pari delicto does not bar its claims for several reasons. First, it contends that the doctrine constitutes an affirmative defense which can only be raised at this stage if the complaint alleges all of the elements of the defense.[61] In this case, the Plaintiff contends that the Amended Complaint does not allege a critical element of the in pari delicto defense, namely that the Defendants committed

---

director of a corporation will be imputed to the corporation.") (citations omitted).

[59]   See Stewart, 112 A.3d at 310 (noting that "in a case where the agent's action is totally adverse to the interests of his principal, the law will not impute knowledge of the bad act to the principal, because it seems nonsensical to presume that a thieving agent would tell his principal about the theft" but finding that imputation was appropriate in that case, because the corporate plaintiff benefitted at least temporarily from the activities of its fiduciary's illegal acts).

[60]   Adv. D.I. 53 ¶¶ 48, 144.

[61]   Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.), No. 08-50248, 2008 WL 4239120, at *11 (Bankr. D. Del. Sept. 16, 2008) (denying investment banker's motion to dismiss based on in pari delicto because an "affirmative defense with disputed facts is not a proper basis to dismiss a complaint") (citations omitted).

criminal acts.[62]  Rather, the Plaintiff asserts that the Amended

Complaint only alleges tortious acts.[63]

Second, although it notes that it does not have the burden

of pleading an exception to an affirmative defense,[64] the

Plaintiff asserts that an exception to the in pari delicto

doctrine is applicable and permits claims against professional

advisors for aiding and abetting breaches of fiduciary duty.[65]

In its reply, Ellenoff contends that criminal acts are not a

necessary element of an in pari delicto defense.[66]  Further, it

---

[62]    See Am. Int'l Group, 976 A.2d at 882 (stating that in pari
delicto is a general rule that bars suits among parties to
criminal acts); In re Rural/Metro Corp. S'holders Litig., 102
A.3d 205, 237 (Del. Ch. 2014) (holding that the doctrine of in
pari delicto did not apply in that case because the defendant did
not engage in "criminal or illegal conduct" but only "committed a
tort by participating knowingly in tortious acts" that did not
rise to the level of criminal acts); In re LJM2 Co-Investment,
L.P., 866 A.2d 762, 775 (Del. Ch. 2004) (declining to apply in
pari delicto because the claim did not involve "some activity
that is per se forbidden by law" but was instead a breach of
contract claim).

[63]    Adv. D.I. 53 ¶¶ 194-258.

[64]    Schmidt v. Skolas, 770 F.3d 241, 251-52 (3d Cir. 2014)
(holding that "the rule [is] that a plaintiff is not required to
plead, in a complaint, facts sufficient to overcome an
affirmative defense" and reversing the district court's dismissal
of the case because the district court had improperly required
the plaintiff to plead facts plausibly supporting the application
of the discovery rule exception to the statute of limitations).

[65]    See, e.g., Stewart, 112 A.3d at 219 (holding that in pari
delicto does not bar claims against professional advisors for
aiding and abetting a breach of fiduciary duty).

[66]    See, e.g., Claybrook v. Broad and Cassel, P.A. (In re Scott
Acquisition Corp.), 364 B.R. 562, 566 (Bankr. D. Del. 2007)
(finding in pari delicto doctrine applied to claims alleging

contend that where an affirmative defense is evident from the fact of a complaint, the burden is on the Plaintiff to prove that the allegations of the complaint support the application of an exception.[67]  Ellenoff therefore contend that the Plaintiff has not stated a plausible claim that Ellenoff aided and abetted the alleged breaches of fiduciary duty.  It also notes that the Stewart case was an action against an auditor[68] and therefore does not support an exception for the case against it, a law firm.  Consequently, Ellenoff argues that the "professional advisors" exception to the in pari delicto doctrine is not applicable here.

The Court agrees with the Plaintiff that at this stage of the proceedings it cannot conclude that the doctrine of in pari delicto bars the claim it brings against Ellenoff.  First, the Plaintiff is not required to plead exceptions to any affirmative defense that a defendant may raise.[69]  Nonetheless, on the face

---

legal malpractice and breach of fiduciary duty absent any allegations of criminal activity).

[67]   See In re Trib. Co. Fraudulent Conv. Litig., 10 F.4th 147, 169 (2d Cir. 2021) (refusing to apply the fiduciary exception where the trustee failed to sufficiently allege facts that fell within the exception).

[68]   Stewart, 112 A.3d at 321-22 (denying motion to dismiss aiding and abetting claims against auditors because, among other things, auditors had falsely advised the directors that previously identified audit irregularities had been addressed already).

[69]   Schmidt, 770 F.3d at 251-52 (holding that "the rule [is] that a plaintiff is not required to plead, in a complaint, facts

18

of the Amended Complaint, the Plaintiff has stated an exception to the in pari delicto doctrine by alleging that Ellenoff, a third party professional, aided and abetted the Directors' breach of their fiduciary duties.[70]  Ellenoff's argument that the Court in <u>Stewart</u> held that the exception is applicable only to auditors and not to law firms is not well-founded.  While the Court in <u>Stewart</u> did discuss a separate exception to the in pari delicto doctrine that is applicable only to auditors, it held that the "fiduciary duty exception" which allows actions for aiding and abetting breaches of fiduciary duty was applicable to other defendants that were not auditors, including a defendant that had provided administrative and management services to the corporation.[71]  Therefore, the Court concludes that the Amended Complaint on its face does not establish the existence of the in pari delicto affirmative defense.

In addition, the Amended Complaint does not allege that the actions of the Defendant were criminal.  Under Delaware caselaw, it appears that an essential element of that defense is that the parties engaged in criminal or illegal activity.[72]  The case cited by Ellenoff to the contrary is inapposite because it

---

sufficient to overcome an affirmative defense").

[70]   <u>Stewart</u>, 112 A.2d at 318-19.

[71]   <u>Id.</u>

[72]   <u>See, e.g.,</u> <u>Am. Int'l Group</u>, 976 A.2d at 882; <u>Rural/Metro</u>, 102 A.3d at 237; <u>LJM2 Co-Investment</u>, 866 A.2d at 775.

19

applies Florida, not Delaware, law.[73]

Consequently, the Court concludes that the claim against Ellenoff cannot be dismissed on the basis of the doctrine of in pari delicto at this stage of the proceedings.  The Court emphasizes, however, that its conclusion is based on the allegations of the Amended Complaint which must be accepted as true in considering the motion to dismiss.[74]

> C.   Aiding and Abetting a Breach of Fiduciary Duty

> 1.   Standard

To state a claim for aiding and abetting a breach of fiduciary duty under Delaware law a plaintiff must plead facts sufficient to show: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach."[75]  Thus, under Delaware law, to state a claim for aiding and abetting a breach of fiduciary duty against Ellenoff, the Plaintiff must first plead facts sufficient to show the existence of a fiduciary

---

[73]   Scott Acquisition Corp., 364 B.R. at 566 ("under Florida law, the 'fraud or misbehavior' of an agent is imputed to the principal under the in pari delicto doctrine." (citing Beck v. Deloitte & Touche, 144 F.3d 732, 736 (11th Cir. 1998))).

[74]   Santiago, 629 F.3d at 130.

[75]   See Malpiede v. Townson, 780 A.2d 1075, 1096 (Del. 2001) (internal quotations omitted).  See also Firefighters' Pension Sys. v. Found. Bldg. Materials, Inc., 318 A.3d 1105, 1169–70 (Del. Ch. 2024).

relationship and a breach of the fiduciary's duty.

a.   Existence of fiduciary duty

Officers and directors of a Delaware corporation owe the corporation the duty of care, the duty of loyalty, and the duty to act in good faith.[76]   The duty of care requires that they inform themselves fully and in a deliberate manner while conducting their duties.[77]   The duty of loyalty requires that the corporation's interests take priority over those of the officers' and directors' interests.[78]   The duty to act in good faith is encompassed in the duty of loyalty.[79]

[76]   See, e.g., Fedders N. Am., 405 B.R. at 539.

[77]   Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 367 (Del. 1993) (holding that the duty of care requires that fiduciaries inform themselves, prior to making a business decision, of all material information reasonably available to them; having become so informed, they must then act with requisite care in the discharge of their duties), decision modified on other grounds, 636 A.2d 956 (Del. 1994); Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 194 (Del. Ch. 2006), aff'd, 931 A.2d 438 (Del. 2007) (claim for breach of duty of care may be sufficiently stated by alleging board approved an acquisition without conducting due diligence, retaining advisors, and after holding only a single meeting with a cursory presentation).

[78]   Cede & Co., 634 A.2d at 361 ("Essentially, the duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally.").

[79]   Fedders N. Am., 405 B.R. at 540.   See also In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 65-67 (Del. 2006) (discussing the relationship between the duty to act in good faith, the duty of care, and the duty of loyalty); In re Orchard Enters., Inc. S'holder Litig., 88 A.3d 1, 33 (Del. Ch. 2014) ("The duty of loyalty includes a requirement to act in good faith, which is 'a subsidiary element, i.e., a condition, of the fundamental duty of

Ellenoff admits that the other Defendants had fiduciary duties to Blue Water but contends that the Plaintiff has failed to state a claim that those Defendants breached any such duty.

b.   Alleged breach of fiduciary duties

Ellenoff argues that the Plaintiff's allegations of breach of fiduciary duty – which are premised on the Merger being unfair due to conflicts of interest, omissions from the Proxy Statement, and unfair price[80] – are insufficient because they rely on conclusory assertions that do not rise to the level of a breach of fiduciary duty.[81]

First, Ellenoff asserts that the alleged conflicts of interest did not constitute a breach of fiduciary duty because they were not material to shareholders.[82]  Even if they were

---

loyalty.'") (citation omitted).

[80]   See, e.g., Adv. D.I. 53 ¶¶ 66-74.

[81]   See, e.g., In re Hennessy Cap. Acquisition Corp. IV S'holder Litig., 318 A.3d 306, 319-20 (Del. Ch. 2024) (holding that "[c]onclusory assertions that the transaction is unfair or coercive or that disclosure is inadequate cannot sustain a breach of fiduciary duty claim under any standard of review.") (internal quotations omitted), aff'd, 337 A.3d 1214 (Del. 2024); Solomon v. Pathe Commc'ns Corp., CIV. A. 12563, 1995 WL 250374, at *6 (Del. Ch. Apr. 21, 1995) (dismissing complaint for failure to state a claim because "a plaintiff must do more than allege that a transaction is a self-interested one in order to state a claim. He or she must as well allege some facts which if true would render the transaction unfair."), aff'd, 672 A.2d 35 (Del. 1996).

[82]   See Globis Partners, L.P. v. Plumtree Software, Inc., Civil Action No. 1577-VCP, 2007 WL 4292024, at *10 (Del. Ch. Nov. 30, 2007) (holding that in determining whether there was a breach of the fiduciary duty to disclose "[t]he essential inquiry is whether the alleged omission or misrepresentation is material,"

material, however, Ellenoff contends that they were fully

disclosed in the Proxy Statement sent to shareholders.[83]

In addition, Ellenoff contends that the Proxy Statement also

sufficiently disclosed Clarus's financial condition and related

risks of the Merger.[84]  Finally, Ellenoff argues that the

Merger's poor result does not, in itself, prove unfairness

because the failure of a post-merger company to live up to

expectations is not retroactive evidence of a breach of fiduciary

duty.[85]  Ellenoff contends that the allegations that the price

paid for Clarus was unfair are meritless because the Plaintiff

does not allege that Blue Water could have achieved a better

price under the circumstances.  Thus, because there was no breach

---

namely whether "there is a substantial likelihood that a
reasonable shareholder would consider it important in deciding
how to vote." (quoting TSC Indus. v. Northway, Inc., 426 U.S.
438, 449 (1976))).

[83]    See Adv. D.I. 65 at 91 (disclosing stock holdings of the
Sponsor, the Directors and Officers), at 189-90 (advising
shareholders "that the Blue Water directors and officers have
interests in the Merger that may be different from or in addition
to (and which may conflict with) your interests as a
stockholder"), at 191 (advising that the Sponsor's and Directors'
interests will be worthless if there is no merger and may be
"significantly higher" than the Sponsor paid for them if there is
a merger).  See also id. at 37 (Ellenoff's fees would be paid on
consummation of the Merger), at Annex A-53-54 (disclosing that
Ellenoff represented the Parent and its affiliates in connection
with the Merger).

[84]    Adv. D.I. 65 at ¶¶ 97-104.

[85]    Cf. In re IBP, Inc. S'holders Litig., 789 A.2d 14, 74 (Del.
Ch. 2001) (finding that "[e]xpressing confidence about a
projection of future results will not support a claim for
material misrepresentation.").

of any fiduciary duty, Ellenoff argues that there can be no claim
that it aided and abetted one.

The Plaintiff responds that it has sufficiently pled
breaches of fiduciary duty by the Sponsor, Hernandez, and the
Directors. The Plaintiff notes that the Amended Complaint
alleges that the Sponsor,[86] Hernandez[87] and the Directors[88] were
all conflicted, inter alia, by holding stock that would realize

---

[86] Adv. D.I. 53 ¶¶ 52-53 (alleging that Sponsor spent
$3,470,000 on stock and warrants in Blue Water, plus expenses it
advanced for Blue Water's benefit), ¶¶ 59-64 (alleging that
Sponsor's stock and warrants would be worthless if the Merger did
not close and could be worth over $14 million if the Merger
closed), ¶ 65 (alleging that "As a result, Sponsor had an
economic incentive to enter into a business combination with a
riskier, weaker-performing or financially unstable business, or
an entity lacking an established record of revenues or earnings
as long as such business combination would close."), ¶ 200
(alleging that "Sponsor would have been left empty handed if Blue
Water did not enter into a business combination because under
that scenario, the Founder Shares and private placement units
would be worthless.").

[87] Id. ¶¶ 67-68 (alleging that Hernandez was the sole managing
member of Sponsor and through it had a $10 million incentive to
close the Merger), ¶ 71 (alleging that Hernandez "had an
additional interest in the consummation of the [Merger] because
he would remain as a director of the combined entity following
the [Merger] and entitled [sic] to be paid for that role.").

[88] Id. ¶¶ 69-70 (alleging that each Director's only
compensation for serving on the Board were membership interests
in Blue Water received from Sponsor worth $100,000 if the Merger
closed; some Directors also held ownership interests in Sponsor
as compensation for serving on the Board), ¶ 72 (Director Murphy
also planned to remain as a Director after the Merger, creating
an additional financial incentive to support it), ¶ 73 (none of
the Directors could be reimbursed for out-of-pocket costs unless
the Merger closed), ¶ 74 (alleging that the Directors also held
positions on other boards as a result of their connections with
Hernandez).

value only if the Merger closed.[89]  The Plaintiff also contends

that it has adequately alleged that the Sponsor,[90] Hernandez[91] and

---

[89]  See, e.g., Rales v. Blasband, 634 A.2d 927, 936 (Del. 1993) ("A director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders" or "where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders."); Delman, 288 A.3d at 719-20 (holding that allegations of close ties directors had with sponsor (through service on other corporations owned by sponsor) was sufficient to state a claim that they were not independent when they considered approving the transaction); Multiplan, 268 A.3d at 814-15 (finding that allegations that directors were not independent because "each had a personal or employment relationship with or received lucrative business opportunities from" controlling shareholder were enough to defeat motion to dismiss).

[90]  Adv. D.I. 53 ¶ 202 (alleging that "Sponsor breached its fiduciary duties of loyalty and care as controlling shareholder by prioritizing its own interests over the best interests of Blue Water and causing Blue Water to enter into the Merger Agreement and close on the [Merger] based on its own interests and despite the fact that the transaction was not in Blue Water's best interests."), ¶ 203 (alleging that Sponsor controlled the process of finding a target and negotiating the Merger, while limiting the information given to the Directors thus forcing them "to evaluate the [Merger] in a rushed and uninformed manner in which they could not consider all of the material information available.  Sponsor, motivated to close a [Merger] by its own self-interest, unfairly coerced a result that was not in the best interests of Blue Water."), ¶ 204 (alleging that "As a result of Sponsor's actions, the Blue Water board of directors did not undertake the thorough and careful process their duties to Blue Water required and approved of [the Merger] that was not in the best interest of Blue Water.").

[91]  Id. ¶¶ 95-96 (alleging that Hernandez told Clarus that it was the target and that he wanted to do the deal, without advice or approval of the Board), ¶¶ 129-30 (alleging that in April 25, 2021, Hernandez became aware that the Merger Agreement reflected a lower amount than he felt it should, which he told Clarus would have a negative financial impact on him), ¶¶ 131-32 (alleging that Hernandez suggested that the Agreement be changed to effectively increase the 'price' of the [Merger] for Blue Water thereby "put[ting] his personal interest ahead of the best

25

the Directors[92] violated their duties of loyalty and care by
prioritizing their own interests over the interests of Blue Water
by taking affirmative actions to close the Merger on terms
favorable to them even though it was not in Blue Water's or the
other shareholders' best interests.[93]

The Plaintiff alleges that the Sponsor and Hernandez
additionally breached their fiduciary duties by exercising
improper control over the Board to further their own interests

---

interest of Blue Water.").

[92] Id. ¶ 66 (alleging that "All of the Blue Water directors had
a similar personal financial interest in ensuring a business
combination occurred, whether it was a good deal for the company
or not."), ¶ 204 (alleging that "the Blue Water board of
directors did not undertake the thorough and careful process
their duties to Blue Water required and approved of a [Merger]
that was not in the best interest of Blue Water."), ¶ 225
(alleging that "the board did not seek a formal opinion from an
unaffiliated third party as to the fair market value of Clarus or
the price that Blue Water paid for Clarus"), ¶ 226 (alleging that
the Board admitted it was focused "only on consummating [the
Merger] at any cost"), ¶ 235 (alleging that even though they were
conflicted, the Directors "failed to appoint an independent board
committee to review and vote on the [Merger], and they failed to
engage a neutral third party to provide a formal valuation or
fairness determination,").

[93] See, e.g., Berteau v. Glazek, No. 2020-0873, 2021 WL
2711678, at *19 (Del. Ch. June 30, 2021) (holding that a
complaint states a plausible claim for breach of the duty of
loyalty where it contains well-pled facts that directors
"harbored self-interest adverse to the stockholders' interests,
acted to advance the self-interest of an interested party from
whom they could not be presumed to act independently, or acted in
bad faith."). See also Orchard Enters., 88 A.3d at 33 (a claim
for breach of the duty of loyalty can be shown if "the director
was interested in the transaction under consideration or not
independent of someone who was. . . . [or] the director failed to
pursue the best interests of the corporation and its stockholders
and therefore failed to act in good faith.").

rather than Blue Water's interests.[94]  In support, it alleges

that the Sponsor controlled the Board[95] and the Merger process

through Hernandez's control over Blue Water during key parts of

the Merger process, including identifying a target and conducting

the Merger negotiations without consultation or approval from the

Board.[96]  It further alleges that Hernandez failed to disclose to

---

[94]    See, e.g., Adv. D.I. 53 ¶ 203 (alleging that "Sponsor
unfairly imposed its will on Blue Water, acting through its
managing member, Hernandez, and with the substantial assistance
of Ellenoff. . . .  Sponsor controlled the information that was
shared with the board" and "caused the other directors to
evaluate the [Merger] in a rushed and uninformed manner in which
they could not consider all of the material information
available.  Sponsor, motivated to close [the Merger] by its own
self-interest, unfairly coerced a result that was not in the best
interests of Blue Water."), ¶ 209 (alleging that "Sponsor
unfairly corrupted the entire decision-making process" by
limiting, inter alia, key parts of the Merger process to
Hernandez, limiting contact that the Board had with Clarus during
the negotiations, and the information disclosed to the
Directors).

[95]    Id. ¶ 90 (alleging that Sponsor had the power to nominate,
elect, and remove the Directors).

[96]    Id. ¶¶ 91-92 (alleging that Sponsor, through Hernandez and
with Ellenoff's assistance, controlled board meetings and the
information disclosed to Directors and only sought approval from
the Board on shortened notice or after the fact); ¶ 93 (alleging
that the Board were given only minimal contact with Clarus during
the negotiations conducted by Hernandez and Ellenoff); ¶¶ 95-96
(alleging that without the Board's knowledge or approval
Hernandez told Clarus that it was the Merger's target and that he
wanted to consummate the Merger); ¶¶ 98-100 (alleging that
without Board approval Hernandez sent a letter of intent and term
sheet, drafted by Ellenoff, offering $175 million to purchase
Clarus),  ¶ 101 (alleging that without conferring with the Board,
Hernandez increased Blue Water's offer by $25 million), ¶ 104
(alleging that even though the Proxy Statement claims that Blue
Water identified 100 companies, including 47 with advanced due
diligence and 12 with confidentiality agreements, the Board was
only given a list of 26 potential targets and only Clarus made a

the Board the significant financial troubles that Clarus was having.[97]

Therefore, the Plaintiff argues that the Amended Complaint sufficiently pleads facts supporting its claims that the other Defendants breached the fiduciary duties they owed to Blue Water under the entire fairness standard.[98]  The Plaintiff argues that the entire fairness standard sets a high bar for dismissal which Ellenoff fails to meet.[99]

---

presentation to the Board).

[97]   Id. ¶ 92(c) (alleging that the Board received no information about Clarus other than the power point presentation it made to the Board on January 27, 2021), ¶¶ 118-20 (alleging that Clarus had disclosed to Hernandez that (1) there was substantial doubt that it could "continue as a going concern," (2) it had never turned a profit, (3) it had substantial debt it was unable to service and it might default on its loans, and (4) it had lost $47 million in 2020 and $15 million in the first three months of 2021).

[98]   See, e.g., Delman, 288 A.3d at 713-14 (holding that the "entire fairness standard of review applies [in this case] due to inherent conflicts between the SPAC's fiduciaries and public stockholders in the context of a value-decreasing transaction"); Multiplan, 268 A.3d at 809-10 (holding that the entire fairness standard applies if the controlling stockholder engaged in a conflicted transaction by inter alia receiving a greater recovery than minority shareholders); In re Crimson Exploration, Inc. S'holder Litig., No. 8541-VCP, 2014 WL 5449419, at *12 (Del. Ch. Oct. 24, 2014) ("Entire fairness is not triggered solely because a company has a controlling stockholder.  The controller also must engage in a conflicted transaction.").

[99]   See Berteau, 2021 WL 2711678, at *15("Because entire fairness review requires the court to adjudicate the fact intensive issue of fair dealing and fair price, a determination that a transaction is subject to entire fairness review 'normally will preclude dismissal of a complaint on a Rule 12(b)(6) motion to dismiss.'" (quoting Orman v. Cullman, 794 A.2d 5, 21 n.36 (Del. 2002))).  See also Delman, 288 A.3d at 722 (holding that

Finally, the Plaintiff argues that it has adequately alleged that the Merger price was unfair because, inter alia, Blue Water expended all its cash for the purchase of Clarus notwithstanding concerns regarding its ability to operate as a viable business.[100] Additionally, the Plaintiff alleges that Hernandez caused the purchase price for Clarus to be increased to benefit Hernandez at the expense of the shareholders.[101]

The Court concludes that the Plaintiff has stated a claim for breach of fiduciary duty by the Sponsor, Hernandez, and the Directors. The Court finds that the allegations are not conclusory or merely a recitation of the elements of such a claim. Rather, the Amended Complaint alleges detailed acts of the Sponsor, Hernandez, and the Directors which evidence actual conflicts of interest, actions taken to advance their interests at Blue Water's expense, and actual harm to Blue Water.[102] Therefore, the Court concludes that the allegations of the Amended Complaint and the reasonable inferences drawn from them, which the Court must accept as true at this stage,[103] adequately

---

the entire fairness standard places the burden on the defendant "to demonstrate that the challenged act or transaction was entirely fair to the corporation and its stockholders.").

[100]   Adv. D.I. 53 ¶ 211. See supra note 97.

[101]   See supra note 91.

[102]   See supra notes 86-88, 90-92, 94-97.

[103]   See Alpizar-Falla, 908 F.3d at 914; Santiago, 629 F.3d at 132.

state a claim for breach of the Sponsor's and the Board's fiduciary duties.[104]

   c.   Scienter

The third element of a claim for aiding and abetting a breach of fiduciary duty requires a showing that the Defendant knowingly participated in the breach of fiduciary duty.[105]

"The standard for an aiding and abetting [a breach of fiduciary duty] claim is a stringent one, one that turns on proof of scienter of the alleged abettor."[106]   To satisfy the scienter element, a plaintiff must allege facts establishing that the

---

[104]   See, e.g., Trenwick Am., 906 A.2d at 194 (claim for breach of duty of care may be sufficiently stated by alleging board approved an acquisition without conducting due diligence, retaining advisors, and after holding only a single meeting with a cursory presentation); Cede & Co., 634 A.2d at 361 (stating that "the duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally").   See also, Delman, 288 A.3d at 713-14 (holding that the "entire fairness standard of review applies [in this case] due to inherent conflicts between the SPAC's fiduciaries and public stockholders in the context of a value-decreasing transaction"); Multiplan, 268 A.3d at 814-15 (finding that allegations that directors were not independent because "each had a personal or employment relationship with or received lucrative business opportunities from" controlling shareholder were enough to defeat motion to dismiss).

[105]   See Malpiede, 780 A.2d at 1097.

[106]   Binks v. DSL.net, Inc., C.A. No. 2823-VCN, 2010 WL 1713629, at *10 (Del. Ch. Apr. 29, 2010).   See also Buttonwood Tree Value Partners, L.P. v. R. L. Polk & Co., No. 9250-VCG, 2017 WL 3172722, at *9 (Del. Ch. July 24, 2017) (stating that "a claim for aiding and abetting often turns on meeting the 'knowing participation' element.").

defendant conspired with the other defendants to breach their fiduciary duty, or it must allege facts from which knowing participation in the breach can be reasonably inferred.[107] "Knowing participation in a board's fiduciary breach requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach"[108] and "provide 'substantial assistance' to the primary violator."[109]  Proof of scienter is "necessarily fact intensive."[110]

Ellenoff argues that, even if the Plaintiff is able to show the existence of an underlying breach of fiduciary duty, the Plaintiff fails to allege sufficient facts showing that Ellenoff itself aided and abetted those breaches.  Ellenoff preliminarily argues that the Plaintiff must meet a high bar to state a claim against legal advisors for aiding and abetting a breach of fiduciary duty.[111]  It argues that courts have imposed such

---

[107]   See McGowan v. Ferro, No. CIV.A. 18672-NC, 2002 WL 77712, at *2 (Del. Ch. Jan. 11, 2002).

[108]   Malpiede, 780 A.2d at 1097.  See also MultiPlan, 268 A.3d at 818.

[109]   In re Mindbody, Inc., S'holder Litig., 332 A.3d 349, 392-93 (Del. 2024) (citations omitted) (holding that substantial assistance requires overt, active participation rather than passive awareness of the breach).

[110]   In re Oracle Corp. Derivative Litig., No. 2017-0337-SG, 2020 WL 3410745, at *11 (Del. Ch. June 22, 2020) (citations omitted).

[111]   See, e.g., Singh v. Attenborough, 137 A.3d 151, 152 (Del. 2016) (Delaware law provides financial advisors "with a high degree of insulation from liability by employing a defendant-friendly standard that requires plaintiffs to prove scienter and

liability on legal advisors only where they either misled the board with materially false information or created an information vacuum.[112]  Ellenoff asserts that, in contrast, the Plaintiff's allegations here merely identify routine law firm work that it did in relation to the Merger.[113]  This, Ellenoff contends, is insufficient to supply the "knowing participation" required to support a claim of aiding and abetting.

Even without that high bar, Ellenoff argues that the

---

awards advisors an effective immunity from due-care liability."); Buttonwood, 2017 WL 3172722, at *9 (dismissing action against law firm finding allegations "far too thin a reed to support scienter and knowing participation in a breach of duty"); Morrison, 2020 WL 2843514, at *11 (finding that "merely pointing to a fee contingent on closing cannot support a claim for intentional bad-faith aiding and abetting on the part of the lawyers").

[112]   See Firefighters' Pension Sys. of City of Kansas City, Missouri Tr. v. Presidio, Inc., 251 A.3d 212, 275 (Del. Ch. 2021) (finding allegations that financial advisor had "misled the Board about material facts, creating an informational vacuum that caused the Board to breach its duty of care" support a reasonable inference of the financial advisor's scienter sufficient to state a claim for aiding and abetting breach of fiduciary duty).

[113]   Adv. D.I. 53 ¶ 20 (alleging that Ellenoff drafted the Proxy Statement), ¶¶ 91-92 (alleging that Ellenoff drafted the S-1 and provided a copy to the Board on the afternoon it was due to be filed), ¶ 105 (alleging that Ellenoff drafted the letter of intent), ¶ 151 (alleging that Ellenoff was to be paid fees and bonus, contingent on the Merger closing) ¶ 172 (alleging that Ellenoff was involved in Hernandez's efforts to convince Blue Water shareholders to reverse decision to redeem their shares), ¶ 266 (alleging that Ellenoff drafted securities transfer agreements related to founders' shares), ¶ 267 (alleging that Ellenoff represented both Sponsor and Blue Water, drafted and participated in negotiations of the Merger documents), ¶ 93, 267 (alleging that Ellenoff attended meetings where Clarus's financial position was disclosed).

Plaintiff fails to establish the key element of scienter necessary for an aiding and abetting claim.  Specifically, Ellenoff contends that the Plaintiff fails to allege that Ellenoff had both knowledge that (i) the other Defendants were breaching their fiduciary duties and (ii) Ellenoff's conduct was legally improper.[114]  Ellenoff asserts that the Court cannot reasonably infer from the Plaintiff's allegations that Ellenoff knowingly participated in any breaches of fiduciary duty.

In particular, Ellenoff asserts that many of the allegations about its actions do not support the inferences that the Plaintiff draws from them.  First, Ellenoff disputes any impropriety related to the preparation or delivery of the S-1 to the Board, denying that it delayed its delivery to leave the Board with insufficient time to review it.[115]  Second, Ellenoff disputes the Plaintiff's suggestion that it participated in any concealment of information by Hernandez and Clarus.[116]  Third, Ellenoff denies the allegation that any of its lawyers were 'insiders' simply because one of its attorneys acted as secretary

---

[114]    See Mindbody, 332 A.3d at 391 (to state a claim for aiding and abetting it must be alleged that the defendant knew "its own conduct regarding the breach was legally improper" in addition to "knowledge that the primary party's conduct was a breach") (emphasis in original).  See also Morrison v. Berry, No. CV 12808-VCG, 2020 WL 2843514, at *11 (Del. Ch. June 1, 2020) (scienter "requires adequately pleading actions [taken] in bad faith through which the aider knowingly advanced the breach").

[115]    Id. ¶ 92.

[116]    Id. ¶ 91.

at the Board meetings, asserting that none of its attorneys were officers of Blue Water and there is no allegation that any acted as an executive or set corporate policy for Blue Water.[117] Fourth, Ellenoff rejects the Plaintiff's argument that it was involved in Hernandez's alleged share redemption efforts because the Amended Complaint fails to allege exactly what Ellenoff did other than routine legal work.[118]  Fifth, Ellenoff disputes the Plaintiff's allegation that its contingent fee creates an inference of scienter because there is no allegation that the fee deviated from industry norms in such a way as to induce Ellenoff to assist others in breaching their fiduciary duties to secure the fee.[119]  Lastly, Ellenoff disputes the allegation that its

---

[117]  Id. ¶ 265.  See also NMI Sys., Inc. v. Pillard (In re NMI Sys., Inc.), 179 B.R. 357, 368-69 (Bankr. D.D.C. 1995) (holding that title of secretary alone is insufficient to make one an 'insider' or officer; rather the appropriate test is whether the individual occupied a high position within the corporation, was active in setting corporate policy, and had other critical executive responsibilities).

[118]  Adv. D.I. 53 ¶ 172.

[119]  See, e.g., Morrison, 2020 WL 2843514, at *11 ("merely pointing to a fee contingent on closing cannot support a claim for intentional bad-faith aiding and abetting on the part of the lawyers."); Lee v. Pincus, No. CV 8458-CB, 2014 WL 6066108, at *14 (Del. Ch. Nov. 14, 2014) (holding that it was not reasonable to infer that, by receiving standard fees alone, the defendant knowingly participated in improper board activity); In re Alloy S'holder Litig., No. CIV.A. 5626-VCP, 2011 WL 4863716, at *11 (Del. Ch. 2011) (holding that fact that financial advisors' fees were partially contingent was insufficient to support an aiding and abetting claim because contingent fees are "routine" and plaintiffs failed to allege that they were "excessive" or "extraordinary").

dual representation of Blue Water and the Sponsor constituted a conflict that was material to shareholders.[120]  It argues that the parties were fully informed of the dual representation, did not object, and that Blue Water waived any conflict.[121]

The Plaintiff disagrees with Ellenoff's argument that the law sets a higher bar to hold legal advisors liable for aiding and abetting breaches of fiduciary duty (which would effectively mean they are immune from such claims).[122]  The Plaintiff argues that the cases Ellenoff cites for this proposition are inapplicable to the facts of this case.[123]  While the Plaintiff

---

[120]    Id. ¶ 267.

[121]    Adv. D.I. 65 (Proxy Statement) at Annex A-53-54.

[122]    See, e.g., Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 415 (3d Cir. 2003) (reversing dismissal of claims against lawyers for civil conspiracy and aiding and abetting a fraud because the "complaint provides numerous allegations of defendants' knowing assistance to DeLorean's fraudulent schemes.  The truthfulness of plaintiffs' allegations regarding the defendants' knowledge of the fraudulent nature of DeLorean's actions is a question of fact to be determined at trial.").  See also Granewich v. Harding, 985 P.2d 788, 793-94 (Or. 1999) ("Legal authorities, however, virtually are unanimous in expressing the proposition that one who knowingly aids another in the breach of a fiduciary duty is liable to the one harmed thereby.  That principle readily extends to lawyers.").

[123]    See Morrison, 2020 WL 2843514, at *11 (holding that merely participating in work related to disclosures and receiving a contingency fee was insufficient to support a claim that the law firm aided and abetted a breach of the duty of care); Buttonwood Tree, 2017 WL 3172722, at *9 (ruling that a single allegation that lawyers advised financial advisor to revise its engagement letter and bill to make it payable from another entity was insufficient to support allegation that law firm participated in breach of fiduciary duty without any allegations that it knew of

acknowledges that Delaware law provides certain protections to advisors against such claims, it asserts that its claim is viable because it alleges that Ellenoff's bad-faith actions caused the Board to breach its fiduciary duties.[124]

At the motion to dismiss stage, the Plaintiff contends that it need only allege facts comprehensively (rather than individually) from which the court may infer knowing participation by Ellenoff in the breach of fiduciary duty.[125]

---

the directors' breach).

[124]    See, e.g., Singh, 137 A.3d at 153 (holding that "an advisor whose bad-faith actions cause its board clients to breach their situational fiduciary duties . . . is liable for aiding and abetting"); RBC Cap. Markets v. Jervis, 129 A.3d 816, 862 (Del. 2015) (holding financial advisor liable for aiding and abetting breach of fiduciary duty where it "knowingly induced the breach by exploiting its own conflicted interests to the detriment of Rural and by creating an informational vacuum.").

[125]    See NHB Assignments LLC v. General Atlantic LLC (In re PMTS Liquidating Corp.), 526 B.R. 536, 546 (D. Del. 2014) ("Under Delaware law, a claim of knowing participation need not be pled with particularity. However, there must be factual allegations in the complaint from which knowing participation can be reasonably inferred. . . .  Conclusory statements of knowing participation will not suffice."") (internal quotations omitted); In re Dole Food Co., Inc. S'holder Litig., Nos. 8703-VCL, 9079-VCL, 2015 WL 5052214, at *42 (Del. Ch. Aug. 27, 2015) (setting forth a non-exhaustive list of factors for courts to take into account when considering whether alleged facts support a reasonable inference of knowing participation including, the nature of the tortious act that the secondary actor participated in or encouraged; the amount, kind, and duration of assistance given, including how directly involved the secondary actor was; the nature of the relationship between the secondary and primary actors; and the secondary actor's state of mind). See also Chester Cnty. Emp.s' Ret. Fund v. KCG Holdings, Inc., No. 2017-0421-KSJM, 2019 WL 2564093, at *19 (Del. Ch. June 21, 2019) (holding that the omission of critical information can give rise to an inference of knowing participation at the pleading stage).

Nonetheless, the Plaintiff argues that the Amended Complaint does
allege sufficient facts to show that Ellenoff knowingly and
actively participated and aided the other Defendants in breaching
their fiduciary duties.[126]  For example, the Plaintiff asserts
that the Amended Complaint alleges that Ellenoff worked closely
with Hernandez throughout the Merger negotiations including
participating in negotiations with Clarus, drafting the deal
documents including the Proxy Statement, and attending and acting
as secretary at the Board meetings.[127]  Despite Ellenoff's
knowledge of Clarus's fragile financial position, the Amended
Complaint alleges that Ellenoff assisted Hernandez in limiting

---

[126]    Adv. D.I. 53 ¶ 198 (alleging that Hernandez handled "all
negotiations with Clarus himself with the substantial assistance
of Ellenoff"), ¶ 203 (alleging that "Sponsor unfairly imposed its
will on Blue Water, acting through its managing member,
Hernandez, and with the substantial assistance of Ellenoff").

[127]    Id. ¶ 76 (alleging that "Ellenoff advised Blue Water
regarding confidentiality agreements with acquisition targets,
the Clarus letter of intent and Merger Agreement, attempts to
raise PIPE and other funding, filings with the Securities and
Exchange Commission, the shareholder vote and redemption process,
and all phases of corporate governance and the [Merger]."), ¶ 93
(alleging that Hernandez and Ellenoff met regularly with Clarus
to discuss Clarus's financial difficulties, particularly as the
date for closing of the [Merger] approached and Clarus continued
to spend much more than it brought in, to the point where Clarus
was in peril of having insufficient funds to continue its
operations), ¶ 113 (alleging that Ellenoff was a part of the
group called the BWAC SPAC Committee which met frequently and
discussed every development in the [Merger] process), ¶ 265
(alleging that Ellenoff served as Board secretary), ¶ 267
(alleging that Ellenoff acted with knowledge that the conduct of
Sponsor and the Directors breached their fiduciary duties because
of its participation in the negotiations with Clarus and Board
meetings discussing it, and its drafting of documents related to
the founders' shares and the Merger).

the information given to the Board and pushing for approval of the Merger.[128]   Thus, the Plaintiff asserts that Ellenoff understates its work as merely administrative when, in fact, the law firm took an active role in concealing conflicts, Clarus's deteriorating financial condition, and potential poor consequences of the Merger from the Board.

Finally, the Plaintiff asserts that Ellenoff's suggestion that the alleged conflicts of interest were disclosed to the shareholders is inaccurate.   While the Proxy Statement, which was "primarily drafted" by Ellenoff,[129] did disclose certain interests of the Directors in the Sponsor, the Plaintiff argues that those disclosures were deficient in several ways.   The Proxy Statement failed to disclose the ownership interests the Directors held in the Sponsor and instead stated that the Directors were "independent"[130] even though Ellenoff knew that they held

---

[128]   Id. ¶¶ 267-68 (alleging that Ellenoff drafted all Merger documents, drafted the agreements transferring Sponsor interests to the Directors, participated in Board meetings as secretary, participated in meetings with Clarus, knew of Clarus's poor financial condition, and substantially assisted the Sponsor and Hernandez to get the deal done with Clarus).

[129]   Id. ¶ 20.

[130]   Id. ¶¶ 16 & 146 (alleging that the Proxy Statement failed to disclose that each of Blue Water's directors, who approved the [Merger] with Clarus, individually owned an interest in Sponsor and therefore also had a conflict), ¶ 144 (alleging that although the Proxy Statement vaguely mentions that the management team may have an interest in Sponsor, it does not disclose which Directors held any interest and the attached chart of equity ownership suggests that Class B common stock was all owned by Hernandez), ¶ 145 (alleging that the Proxy Statement states that Directors

ownership interests in the Sponsor because it had drafted those documents.[131]   The Proxy Statement also failed to disclose the significant influence Hernandez had over the Directors at the time.[132]

Second, the Plaintiff argues that the Proxy Statement failed to adequately disclose Ellenoff's dual representation of the Sponsor and Blue Water, because that disclosure was "buried" in an Annex to the Proxy Statement.[133]   Nor did the Proxy Statement disclose that Ellenoff would be entitled to its fee and a bonus only if the Merger closed.[134]

Third, the Plaintiff asserts that the Proxy Statement did not cure Ellenoff's failure to provide the Board with adequate

---

Murphy, McBurney, Sapirstein and Lerner are independent directors and have no beneficially owned shares in Sponsor).

[131]   Id. ¶ 69.

[132]   Id. ¶ 147 (alleging that Hernandez had appointed the Directors to the Blue Water Board and other boards of companies he controlled).

[133]   Id. ¶ 17 (alleging that during the relevant time Ellenoff represented both Blue Water and the Sponsor), ¶ 150 (alleging that "[t]he Proxy Statement does not disclose that Blue Water's counsel, Ellenoff, which authored the Proxy Statement, simultaneously represented Sponsor."). See Vento v. Curry, No. 2017-0157-AGB, 2017 WL 1076725, at *3-4 (Del. Ch. Mar. 22, 2017) (holding it likely that plaintiff would prevail on the merits of its contention that disclosures of information related to financial advisor's conflict of interest were inadequate where they were not disclosed in a clear and transparent manner but were dispersed in the Amended Registration Statement and in a Form 8-K filed ten weeks earlier).

[134]   Adv. D.I. 53 ¶¶ 150-51.

information to make its decision on the Merger because the Proxy Statement could not have disclosed facts evidencing Clarus's continued declining financial condition after the Proxy Statement was issued (of which Ellenoff was aware and failed to bring to the Board's attention).[135]

Thus, the Plaintiff asserts that the Amended Complaint sufficiently alleges that Ellenoff knowingly participated in breaches of fiduciary duty by providing substantial assistance to the Sponsor and Hernandez in their breaches. At a minimum, the Plaintiff argues that the allegations in the Amended Complaint support the inference that Ellenoff knowingly participated in the breaches of fiduciary duty. It contends that these allegations are sufficient to state a claim for breach of fiduciary duty and aiding and abetting a breach of fiduciary duty.[136]

---

[135]   Id. ¶ 18 (alleging that Clarus had failed to obtain PIPE financing and on the eve of the closing was on the brink of bankruptcy), ¶ 169 (alleging that Clarus's counsel advised Hernandez that it was prepared to file for bankruptcy when the shareholder redemption failed to leave Blue Water with sufficient cash), ¶ 180 (alleging that Clarus had spent almost all of the additional investment provided by its own stockholders as part of the Merger just to make it to the date of closing), ¶ 183 (alleging that Clarus was on track to suffer a net loss of $40.6 million for FY 2021).

[136]   See United States v. Energy Sols., Inc., 265 F. Supp. 3d 415, 445 (D. Del. 2017) ("Delaware courts have found that a no-talk provision without a fiduciary-out, as existed here, 'is the legal equivalent of willful blindness' that may prevent a board from meeting its duty to 'be informed of all material information reasonably available,' which would include reasonable alternative offers."). See also Berteau, 2021 WL 2711678, at *15, 22-24 (finding that a reasonable inference of breach of fiduciary duties may be drawn from allegations that a controlling

The Court concludes that the Plaintiff has stated a
plausible claim against Ellenoff for aiding and abetting a breach
of fiduciary duty.  As noted above, Ellenoff disputes many of the
allegations made by the Plaintiff.[137]  However, on a motion to
dismiss, the Court cannot consider the defendant's version of the
facts but must, instead, accept as true the well-pled allegations
of the plaintiff.[138]  Ellenoff "bears the burden to show that the
plaintiff's claims are not plausible."[139]  The Court concludes
that Ellenoff has not met that burden here.

The Court finds that Ellenoff's argument that it has no
liability for such a claim because it served as the Blue Water
outside counsel goes too far.  While there is a higher bar to
meet in asserting a claim for aiding and abetting a breach of
fiduciary duty against a law firm,[140] courts have imposed such
liability on law firms where they knowingly participated in

---

stockholder was subject to a potential conflict of interest,
selected counsel for a special committee of directors so that it
could not push back on the will of the controlling stockholder,
and imposed time constraints which compromised the integrity of
the board's deliberative process).

[137]   See supra text and notes 115-21.

[138]   See Alpizar-Falla, 908 F.3d at 914; Santiago, 629 F.3d at
132.

[139]   UMB Bank, 610 B.R. at 783.

[140]   Singh, 137 A.3d at 152-53 (requiring actual "bad-faith
actions").  See also Morrison, 2020 WL 2843514, at *11 (finding
only that a fee contingent on closing was insufficient evidence
of bad-faith against the company's lawyers); Buttonwood, 2017 WL
3172722 at *9 (finding allegations ""strained").

another's breach of its fiduciary duties.[141]

At this stage, the Plaintiff need only allege enough facts for the Court to be able to draw a reasonable inference that Ellenoff knowingly participated in the other Defendants' breach of their fiduciary duties.[142]  The Court concludes that the Plaintiff has met that standard with its allegations that Ellenoff knowingly participated in the breaches of fiduciary duty by assisting Hernandez, inter alia, in limiting information given to the Board in connection with the Merger.[143]  The Amended

---

[141]   See, e.g., Morganroth & Morganroth, 331 F.3d at 415 (reversing dismissal of claims against lawyers for aiding and abetting a fraud); Granewich, 985 P.2d at 793-94 (holding that lawyers who knowingly aid another in a breach of fiduciary duty are liable for aiding and abetting such a breach).

[142]   See PMTS Liquidating Corp., 526 B.R. at 546 (holding that a claim of knowing participation in a breach of fiduciary duty need not be pled with particularity).

[143]   Adv. D.I. 53 ¶ 91 (alleging that "[t]he Blue Water board relied on information provided by Hernandez, its counsel, Ellenoff, and its financial advisor, Maxim Group.  Together, they created an information vacuum that deprived the board of material information and limited the board's ability to exercise its own judgment."), ¶ 92 (alleging that the Board was given information for approval at the last minute, the Board did no investigation of targets and relied on information given to it), ¶ 104 (alleging that information provided to the Board as to target acquisition process was more limited than suggested by the proxy statement), ¶¶ 106-07 (alleging that Merger agreement contained no-talk provisions), ¶ 128 (alleging that the Board obtained no independent valuation of Clarus), ¶ 264 (alleging that the Board meetings were short and Hernandez and Ellenoff limited information provided to the Board), ¶ 267 (alleging that Ellenoff knew of Clarus's failure to attract PIPE financing, of negative feedback from potential investors, and of Clarus's tenuous financial position), ¶ 268 (alleging that "Ellenoff, knowing the financial incentive for Sponsor to approve any deal, even a bad deal, and knowing that Clarus was in a precarious financial

Complaint alleges that although Ellenoff knew of Clarus's precarious deteriorating financial condition and that the Board had not obtained an independent valuation of Clarus, it took substantial actions to support Hernandez's efforts to get the Merger done by actively participating in negotiations with Clarus and drafting disclosure and closing documents.[144]

Furthermore, the Amended Complaint alleges that although Ellenoff was fully aware of the conflicted position of the Directors,[145] it drafted the Proxy Statement that obfuscated those facts.[146] The Amended Complaint also alleges that the Proxy Statement failed to disclose Ellenoff's own conflict of interest created by the fact that it represented both Blue Water and the

---

condition, substantially assisted Sponsor (via Hernandez) and Hernandez in pushing for a closing [of] the [Merger].").

[144] See, e.g., supra notes 127-28.

[145] Adv. D.I. 53 ¶¶ 69 (alleging that Ellenoff drafted the security transfer documents conveying interests in the Sponsor to the Directors).

[146] Id. ¶ 145 (alleging that Proxy Statement stated that the Directors were "independent directors" and did not have a relationship that "would interfere with the directors' independent judgment in carrying out the responsibilities of a director"), ¶ 144 (alleging that Proxy Statement does not clarify which Directors own interests in the Sponsor, stating that "the Blue Water management team owns interests in Sponsor and may have an economic incentive that differs from that of the public stockholders to pursue and consummate the [Merger] rather than to liquidate and to return all of the cash in the trust to the public stockholders."), ¶ 150 (alleging that Ellenoff drafted the Proxy Statement).

Sponsor and would only be paid if the deal with Clarus closed.[147]

Although Ellenoff asserts that its dual representation was

disclosed in the Proxy Statement Annex, courts have held that

conflicts of interest must be prominently displayed and not

hidden in a morass of paperwork.[148]  Concealment of a conflict of

interest may itself be evidence of knowing participation in a

breach of fiduciary duty.[149]

In addition, the allegations that Ellenoff had a contingent

fee arrangement may also be evidence supporting a claim of aiding

and abetting a breach of fiduciary duty.[150]  Thus, the Court finds

---

[147]  Id. ¶¶ 17, 150 (alleging that Ellenoff failed to disclose
its dual representation of the Sponsor and Blue Water in the
Proxy Statement), ¶ 151 (alleging that the Proxy Statement did
not disclose that Ellenoff's fees were contingent on closing the
Merger).

[148]  See, e.g., Vento, 2017 WL 1076725, at *3-4 (holding that
"disclosure is inadequate if the disclosed information is
'buried' in the proxy materials" and "[a] stockholder should not
have to go on a scavenger hunt" to uncover an advisor's conflicts
of interests) (citations omitted).

[149]  See, e.g., Presidio, 251 A.3d at 275 (holding that
allegations of concealment of its own self-interest was
sufficient to support an inference of knowing participation in a
breach of fiduciary duty).

[150]  See, e.g., Miller v. Kirkland & Ellis LLP (In re IH 1,
Inc.), Adv. No. 12-50713, 2016 WL 6394296, at *28 (D. Del. Bankr.
Sept. 28, 2016) (holding that an allegation that a law firm's
"legal advice facilitated payment of a substantial dividend, part
of which [its] partners ultimately received" was sufficient for
the court to "infer such knowledge where the alleged aider and
abettor gained an advantage from the board's breach of its
duties."); Presidio, 251 A.3d at 275 (holding allegations of
self-interest sufficient to support inference of knowing
participation); Houseman v. Sagerman, No. 8897-VCG, 2014 WL
1600724, at *9 (Del. Ch. Apr. 16, 2014) ("[a]n inference of

plausible the inference that the contingent fee arrangement
Ellenoff had gave it an incentive to assist the other Defendants
in closing the Merger despite it not being in the best interest
of Blue Water.  While there are cases that hold that merely being
paid on a contingent fee basis is insufficient to prove active
participation, the Court notes that this is but one of the
Plaintiff's many allegations in support of its aiding and
abetting claim.  In addition, the Court finds that it is
significant that the Plaintiff also alleges that the contingent
fee arrangement was not disclosed because concealing such a fee
arrangement has been held to be problematic.[151]  Thus, the Court
concludes that the Plaintiffs' allegations that Ellenoff had a
contingent fee arrangement that was not sufficiently disclosed[152]
is factual support for a claim that Ellenoff aided and abetted

---

knowing participation may be made where, for example, an aider
and abettor gained an advantage from a board's breach of its
duties").  See also IRA Tr. FBO Bobbie Ahmed v. Crane, No. 12742-
CB, 2017 WL 7053964, at *20 (Del. Ch. Dec. 11, 2017) ("Contingent
fee arrangements obviously can be problematic because they may
incentivize advisors to prioritize the closing of the transaction
over getting the best deal possible for stockholders.").

[151]   See, e.g., In re Atheros Commc'ns, Inc., C.A. No. 6124-VCN,
2011 WL 864928, * 8-9 (Del. Ch. March 4, 2011) (holding that
disclosure that a substantial portion of fee (98%) was contingent
was insufficient because the contingent portion of the fee
exceeded both common practice and common understanding of what
constitutes "substantial" and that stockholders should be made
aware of the fact that the financial advisor "stands to reap a
large reward only if the transaction closes and, as a practical
matter, only if the financial advisor renders a fairness opinion
in favor of the transaction.").

[152]   Adv. D.I. 53 ¶ 151.

the Sponsor and Hernandez in a breach of their fiduciary duties.

Considering all of the allegations of the Amended Complaint and accepting them and all reasonable inferences arising from them as true which the Court must at this stage,[153] the Court finds that the Plaintiff has stated a claim against Ellenoff for aiding and abetting a breach of fiduciary duty.

## V.   CONCLUSION

For the forgoing reasons, the Court will deny Ellenoff's Motion to Dismiss.

An appropriate Order is attached.

Dated: January 13, 2026          BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

---

[153] See Alpizar-Falla, 908 F.3d at 914; Santiago, 629 F.3d at 132.